1  ERIC P. ISRAEL (State Bar No. 132426)
   eisrael@DanningGill.com
2  ZEV SHECHTMAN (State Bar No. 266280)
   zshechtman@DanningGill.com
3  AARON E. DE LEEST (State Bar No. 216832)
   adeleest@DanningGill.com
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Carolyn A. Dye, Chapter 7 Trustee

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11

12  In re                              Case No. 2:23-bk-14820-BB

13  JAMES CAPITAL ADVISORS, INC.,      Chapter 7

14          Debtor.                    TRUSTEE'S NOTICE OF OPPOSITION
                                       AND PARTIAL OPPOSITION TO
15                                     MOTION FOR RELIEF FROM STAY;
                                       MEMORANDUM OF POINTS AND
16                                     AUTHORITIES AND DECLARATION OF
                                       CAROLYN A. DYE IN SUPPORT
17                                     THEREOF

18                                     DATE:  September 12, 2023
                                       TIME:   10:00 a.m.
19                                     PLACE: Courtroom "1539"
                                              255 E. Temple Street
20                                            Los Angeles, CA

21

22

23

24

25

26

27

28

1727077.3  27180                    1

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................3

I.    STATEMENT OF FACTS .............................................................................................3

II.   ARGUMENT ...............................................................................................................6

   A.   Mandel's Discussion of the Arbitration Act is Putting the Cart Before the
        Horse.....................................................................................................................8

   B.   The *Curtis* Factors Mitigate Against Lifting the Stay at this Time On the
        Claims Other than a Simple Dissolution ............................................................9

        1.   The lack of any connection with or interference with the bankruptcy
             case ..........................................................................................................11

        2.   Whether the foreign proceeding involves the debtor as a fiduciary ..............11

        3.   Whether a specialized tribunal has been established to hear the
             particular cause of action and whether that tribunal has the expertise
             to hear such cases.....................................................................................11

        4.   Whether the debtor's insurance carrier has assumed full financial
             responsibility for defending the litigation.........................................................11

        5.   Whether the action essentially involves third parties, and the debtor
             functions only as a bailee or a conduit for the goods or proceeds in
             question....................................................................................................11

        6.   Whether the litigation in another forum would prejudice the interests
             of the other creditors, the creditors' committee and other interested
             parties.......................................................................................................12

        7.   Whether the relief will result in a partial or complete resolution of the
             issues........................................................................................................12

        8.   Whether the judgment claim arising from the foreign action is subject
             to equitable subordination.............................................................................12

        9.   Whether movant's success in the foregoing proceeding would result
             in a judicial lien avoidable by the debtor under section 522(f) ....................12

        10.  The interests of judicial economy and the expeditious and
             economical determination of litigation for the parties.................................12

        11.  Whether the foreign proceedings have progressed to the point where
             the parties are prepared for trial.....................................................................13

        12.  The impact of the stay and the "balance of the hurt" ...................................13

III.  CONCLUSION.............................................................................................................14

1727077.3  27180

i

# TABLE OF CONTENTS
### (Continued)

**Page**

DECLARATION OF CAROLYN A. DYE ....................................................................15

1

# TABLE OF AUTHORITIES

2

**Page**

3    **CASES**

4    *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir.
         1990) ............................................................................................................................ 10

5

6    *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ............................................................... 10

7    *In re Duvar Apt, Inc.*, 205 B.R. 196 (B.A.P. 9th Cir. 1996) ................................................ 9

8    *In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994) ......................................... 9

9    *In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009) ...................................................... 10

10    *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551 (Bankr. C.D. Cal. 2004) ...................... 9, 10

11    *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990) ............................................. 9, 10

12    *MacDonald v. Macdonald (In re MacDonald)*, 755 F.2d 715 (9th Cir. 1985) ................................. 10

13    *Ozai v. Tabuena (In re Ozai)*, 34 B.R. 764 (B.A.P. 9th Cir. 1983) ................................... 10

14    **STATUTES**

15    11 U.S.C. § 341(a) ................................................................................................................. 4

16    11 U.S.C. § 362 ................................................................................................................... 15

17    11 U.S.C. § 362(d)(1) ........................................................................................................... 9

18    11 U.S.C. § 362(g) ................................................................................................................ 9

19    11 U.S.C. § 704 ................................................................................................................... 15

20    11 U.S.C. § 704(a) .............................................................................................................. 11

21    **RULES**

22    Fed. R. Bankr. P. 9019(b) .................................................................................................... 4

23

24    **TREATISES**

25    3 Alan N. Resnick & Henry J. Sommers, *Collier on Bankruptcy*, § 362.10 (16th ed. 2013) ............. 9

26

27

28

1727077.3  27180                                      iii

1    TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY

2   JUDGE, THE DEBTOR, MOVANTS AND INTERESTED PARTIES:

3    Carolyn A. Dye, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of James

4   Capital Advisors, Inc. (the "Debtor"), hereby submits her Partial Opposition ("Opposition") to the

5   Motion for Relief from the Automatic Stay (*doc. no. 30*) (the "RFS Motion") filed by James

6   Mandel IV and Chelsea Mandel II (jointly and severally, "Mandel") .

7    The Opposition is based upon the attached Memorandum of Points and Authorities and the

8   Declaration of Carolyn Dye.  Any reply in support of the RFS Motion must be filed and served not

9   less than 7 days before the date of the hearing.

10

11   DATED: August 29, 2023                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

12

13                                      By: _____

14                                          ERIC P. ISRAEL
                                           AARON E. DE LEEST
15                                          Attorneys for Carolyn A. Dye, Chapter 7 Trustee

16

17

18

19

20

21

22

23

24

25

26

27

28

1727077.3  27180                              2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

On July 31, 2023 (the "Petition Date"), James Capital Advisors, Inc. ("Debtor") filed a voluntary "emergency" petition for relief under Chapter 7 of title 11 of the United States Code, commencing bankruptcy case no. 2:23-bk-14820-BB.

On or about August 14, 2023, the Debtor filed its Schedules and Statement of Financial Affairs (*doc. no. 13*). The Debtor's Schedule A/B lists the Debtor's 50% interest in the Joint Venture as an asset of the Debtor's estate.

Carolyn A. Dye was appointed as the Chapter 7 trustee of the bankruptcy estate (the "Trustee"), in which capacity she continues to serve.

The Debtor is a real estate brokerage firm. In the ordinary course of its business, the Debtor, through its agents, facilitated real estate transactions between buyers and sellers of real property. As of the Petition Date, the Debtor was the broker in not less than thirteen real estate transactions (the "Pending Transactions") and had the usual contractual rights under previous listings if any buyer identified under that listing agreement ultimately purchased the property at issue.

On August 10, 2023, the Trustee filed an emergency motion for authority to operate the Debtor's business for limited purposes (*doc. no. 9*) (the "Operating Motion"), which was heard on August 15, 2023. The Court granted the Operating Motion at the hearing and the order was entered by the Court on August 17, 2023 (*doc. no. 33*).

Movants James Mandel JV, LLC (the "Joint Venture") and Chelsea Mandel II LLC (jointly and severally, "Mandel") opposed the Operating Motion (*doc. nos. 11-12*). The Trustee understands that the Joint Venture was involved in sale-leaseback transactions.[1]

---

[1] Mandel asserts that three of the 13 Pending Transactions were sale-leaseback transactions and, therefore, Mandel assets that such transactions belong to the Joint Venture.

1        The initial meeting of creditors under 11 U.S.C. § 341(a) has not yet been held and is

2  currently set for September 7, 2023.

3        Consistent with her duties, the Trustee is diligently working to liquidate the estate's assets,

4  account for the Debtor's property, investigate the Debtor's business and financial affairs, and the

5  other activities attendant with the Trustee's fiduciary role.

6        The Trustee has been communicating regularly with the Debtor's former employees, the

7  Debtor's bankruptcy counsel, and a number of former agents of the Debtor who are responsible for

8  the Pending Transactions.  The Trustee is focused on helping the agents responsible for closing the

9  Pending Transactions so that those agents and the estate can collect their shares of commissions.  In

10  furtherance of the Trustee's effort to make sure that the prepetition pipeline of the Debtor's

11  business can benefit the estate's creditors, the Trustee has been encouraging former agents to

12  continue listing properties that were part of the Debtor's unfinished business.  Accordingly, the

13  Trustee has sought authority to enter into agreements with successor brokerages on commercially

14  reasonable terms without requiring Court authority for an arrangement with each of the Debtor's

15  former agents.  See docket no. 48 (Trustee's motion for authority to compromise in classes under

16  Fed. R. Bankr. P. 9019(b)).

17        The Trustee and her counsel have also been communicating extensively with Mandel's

18  counsel (and the Trustee with Chelsea Mandel personally), spending several hours listening to their

19  concerns, both in person and over the telephone or videoconference.  The Trustee and her counsel

20  have received hundreds, if not thousands of pages of documents, over recent weeks, from the

21  Debtor and Mandel.  The Trustee and her counsel have received and replied to many dozens of

22  email communications from Mandel's counsel over this time.  Mandel has expressed repeatedly

23  that Mandel believes her concerns are urgent.  The Trustee has been personally very involved in

24  discussions with Mandel and has invested her energy and the estate's resources in attempts to work

25  out issues with Mandel on a consensual basis.

26        However, despite all of these communications, and the Trustee's and her counsel's best

27  efforts, the Trustee has not had sufficient time to analyze the requests made by Mandel and has not

28  received sufficient information to satisfy the Trustee's investigative mandate.  For example,

1  Mandel seeks dissolution of the Joint Venture, but the Trustee does not know the value of the

2  estate's 50% interest in the Joint Venture.  In the latest email the proposed dissolution date was

3  January 1, 2023, which the Trustee rejected.  Among other information which the Trustee lacks is

4  information that would aid in the evaluation of the pipeline of the Joint Venture's business, bank

5  records or the complete accounting records of the Joint Venture for the last several months.

6  Mandel's position is that the formal dissolution should be allowed immediately, now retroactive to

7  January 1, 2023, and the economic impact on the estate of such dissolution should be determined

8  later.  The Trustee is concerned that the decision to dissolve itself and its effective date may have

9  economic impacts on the estate that the Trustee has not been afforded sufficient time to investigate,

10  let alone understand.  The Trustee is concerned that business of the Joint Venture may have been

11  diverted to new ventures, and the Trustee needs to investigate these and other issues.

12          Notwithstanding, the Trustee's efforts to resolve issues with Mandel, on or about August

13  16, 2023, Mandel filed her Motion for Relief from Stay (*doc. no. 30*) (the "RFS Motion") and

14  Application for Order Setting Hearing on Shortened Notice for Motion for Relief From the

15  Automatic Stay (*docket no. 29*) (the "Application Shortening Time").  After receiving notice of the

16  Application Shortening Time, the Trustee's counsel immediately and repeated made demand for

17  such financial documents that would aid the Trustee in evaluating the Debtor's interest in the Joint

18  Venture.  In response, on or about August 17, 2023, Mandel's counsel provided a limited set of

19  documents.

20          The Trustee opposed the Application to Shorten Time (*doc. no. 35*), and the Court denied

21  the Application to Shorten Time (*doc. no. 40*) based on a lack of good cause.

22          Mandel then gave notice of the motion on regular notice (without refiling the Motion) (*doc.*

23  *no. 45*).

24          The RFS Motion seeks an order from the Court lifting the automatic stay to allow an

25  arbitration to proceed before a New York arbitrator who was only appointed in May 2023 (the

26  "Arbitration").  RFS Motion, Memorandum of Points & Authorities, doc. no. 30-2, page 5, line 10.

27  The Arbitration seeks four types of relief:  (1) to liquidate damages owing by the Debtor to

28  Mandel; (2) to liquidate damages owing by the Debtor to the Joint Venture; (3) to assess attorneys'

1  fees against the Debtor, and (4) for a dissolution of the Joint Venture "and certain ancillary relief."

2  Id. pp. 4-5.  The Trustee is advised that the Debtor has asserted cross-claims back as well.

3  According to the Arbitration scheduling order, the arbitration hearing, i.e., trial was

4  tentatively scheduled for October 9-13.  See Exhibit 1 to RFS Motion, doc. no. 30-1 at ECF page

5  10.

6  The Trustee has only begun to investigate the Joint Venture and has not determined

7  whether, and, if so, to what extent, she will participate in the Arbitration if relief from stay were

8  granted.  The Trustee could not be in a position to meaningfully appear and participate in the

9  Arbitration with the upcoming deadlines, many of which have already passed.  See RFS Motion at

10  page 5, line 10 through page 6, line 13, and Exhibit 1, doc. no. 30-1 at ECF page 10.  The Trustee

11  has also not located or retained counsel to represent her in the Arbitration in New York, and the

12  Court has also not authorized the Trustee to employ special litigation counsel to represent the

13  Trustee in the Arbitration.  Accordingly, if relief from stay were granted, the Trustee would not be

14  able to participate in the Arbitration, which could result in a ruling or judgment against the Debtor

15  adversely affecting the estate.

16  With respect to the request to dissolve the Joint Venture, the Trustee does not oppose lifting

17  the stay to allow the Arbitrator to dissolve the Joint Venture, but that relief should be narrow and

18  only allow dissolution and not a winding up of the affairs, and only as of the Petition Date.

19  For all these reasons, the RFS Motion should be denied, except for a limited lifting to allow

20  the Arbitrator to order a dissolution as of the Petition Date but not wind up the Joint Venture's

21  affairs.  The Trustee further prays for all other appropriate relief.

22

23  **II.**

24  **ARGUMENT**

25  Here, for the reasons discussed below, no good cause is shown to grant the RFS Motion.

26  The purpose of the automatic stay in this situation is to protect the Debtor's estate, its

27  assets, and the interests of all creditors from aggressive creditors who, to the detriment of other

28  creditors, race to the courthouse and adversely impact the estate of an insolvent entity.  The

1  automatic stay is designed to enable the orderly administration of the bankruptcy estate, which in

2  turn promotes the policy of equality of distribution among all creditors, not just the most aggressive

3  creditor. The Trustee needs an adequate amount of time to conduct her investigation into the Joint

4  Venture before any potential value is lost via a dissolution in the arbitration. There is real potential

5  harm to the Debtor's estate from moving so quickly. It is simply unknown at this time to the

6  Trustee, notwithstanding the assurances of Mandel's counsel, what outcome dissolution of the Joint

7  Venture in the arbitration will have on the Debtor's interest and value to the estate. Additionally,

8  turning over assets of the estate when the value is unknown and/or title to such assets may be in

9  dispute will be detrimental to all creditors that may have an interest in receiving a distribution from

10 the estate.

11         First, there is no underlying urgency here. The RFS motion makes clear that the arbitrator

12 was only appointed on May 3, 2023, and the first hearing in the Arbitration took place on June 2,

13 2023. Although the arbitrator appears to have made a few initial rulings and issued a scheduling

14 order, the final

15         Arbitration hearing is not set to be held until October 9-13, 2023. *See* doc. no. 30-1, Ex. 1.

16 There is no evidence that the prior dates or the final hearing set by the arbitrator must go forward as

17 scheduled now that the Debtor has filed bankruptcy. In fact, the August 7, 2023 Arbitration

18 hearing cited by Mandel on the dissolution of the Joint Venture was already cancelled by Mandel's

19 counsel and did not go forward because of the Debtor's bankruptcy filing.

20         Moreover, the Trustee will not be prepared to proceed with the current deadlines set in the

21 Arbitration or a final Arbitration hearing in October 2023. She needs to be able to conduct her

22 investigation and possibly retain special litigation counsel.

23         Second, the Trustee needs time to investigate the estate's interest in the Joint Venture and

24 its value for the Debtor's estate. As set forth above, the bankruptcy case was only filed and the

25 Trustee was only appointed on July 31, 2023 – approximately four weeks ago. The Debtor did not

26 file its schedules until August 14, 2023 – a mere two weeks. The initial 341(a) meeting has not

27 even taken place. The Trustee is investigating whether the underlying joint venture agreement may

28 be an executory contract. Contractual rights of the Debtor comprise estate property protected by

1    the automatic stay.  The Trustee will need time to evaluate whether the joint venture agreement

2    may have value for the estate.  However, the Trustee does not believe that she can conduct and

3    conclude her investigation into the nature of the Debtor's interest in the Joint Venture and the value

4    thereof and be in a position to adequately address the estate's concerns and respond to the issues

5    raised by Mandel, in the time demanded by Mandel.  Such investigations take time and may require

6    the use of forensic accountants or other experts.

7        The Trustee has been working to preserve the estate's assets, working with a number of

8    agents and assets that have nothing directly to do with Mandel.  At the same time the Trustee has

9    been trying to better understand Mandel's position and is hoping to be able to provide Mandel with

10   some of the things that Mandel demands without need for Court intervention, or by stipulation.

11   However, the Trustee has been unable to conduct her due diligence, address the administrative

12   needs of the estate, and respond to various litigation matters generated by Mandel under the time

13   constraints sought by Mandel.

14       Third, and finally, it is important to note that Mandel admits that the Arbitration seeks: (a)

15   money damages from the Debtor to Mandel; (b) money damages from the Debtor to the Joint

16   Venture; (c) dissolution of the Joint Venture; and (d) attorneys' fees.  *See* RFS Motion, doc. no. 30-

17   2.  The Trustee understands that the Debtor filed cross-claims as well.  Thus, the relief requested in

18   the Arbitration includes requests for damages and fees against the Debtor, which are pre-petition

19   claims, and dissolution of the Joint Venture.  There is no urgency here to determining any damages

20   owing from the Debtor.  Mandel and the Joint Venture can file their proofs of claim and the Court

21   can resolve those claims, if and when it needs to do so.  With respect to any dissolution, again, it is

22   unknown at this time what ultimate result a dissolution will have on the Debtor's interest in the

23   Joint Venture.  The Court should not permit Mandel to rush the estate to that conclusion,

24   potentially damaging any value to the estate, when the Trustee's investigation has only begun.

25   **A.    Mandel's Discussion of the Arbitration Act is Putting the Cart Before the Horse**

26       If one of the parties were asking the Bankruptcy Court to rule on the matters recently sent to

27   Arbitration, Mandel's discussion of the Federal Arbitration Act might be relevant.  The Trustee

28   notes on that score that the Debtor's interest in the Joint Venture is property of the estate, so

1    Mandel's allegation that the matter is not a core matter may be entirely misdirected.  In any event,

2    the relevant discussion should be whether the stay should be lifted at this time, not where the

3    claims will be litigated.

4            Now that there is a bankruptcy filing, Mandel and the Joint Venture can file claims against

5    the estate.  As it is unclear whether there will ever be funds in the estate to pay any damages that

6    may be assessed, there is no need to force litigation to liquidate those claims.  Mandel can file her

7    proof of claim, which is deemed allowed until someone objects.  After the Trustee completes her

8    investigation, the Trustee will be in a position to suggest a course of action  -- if any action is

9    needed at all.  There is no need to lift the stay at this time to assert unsecured claims against the

10   estate.

11           With respect to the dissolution, the Trustee does not oppose lifting the stay for the sole

12   purpose of dissolving the Joint Venture, but not to wind up its affairs or rule on ownership of assets

13   or claims between the parties, although the effective date for dissolution should be the Petition Date

14   for purposes of determining the assets of the Joint Venture.  The winding up can be addressed later

15   after the Trustee completes her investigation and has time to determine the best course of action for

16   the estate.

17   **B.**      **The _Curtis_ Factors Mitigate Against Lifting the Stay at this Time On the Claims Other**

18           **than a Simple Dissolution**

19           The burden of proof on a motion for relief from the automatic stay is a shifting one.  _See_ 11

20   U.S.C. § 362(g); _In re Plumberex Specialty Products, Inc._, 311 B.R. 551, 557 (Bankr. C.D. Cal.

21   2004) (citing _In re Sonnax Indus., Inc._, 907 F.2d 1280, 1285 (2d Cir. 1990)).  To obtain relief from

22   the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists

23   for relief under § 362(d)(1).  A prima facie case requires the movant to establish a "factual and

24   legal right to the relief that it seeks." _Id._ n.10; _see also_ 3 Alan N. Resnick & Henry J. Sommers,

25   _Collier on Bankruptcy_, § 362.10 (16th ed. 2013) (citing _In re Elmira Litho, Inc._, 174 B.R. 892, 902

26   (Bankr. S.D.N.Y. 1994)).  Once a prima facie case has been established, the burden shifts to the

27   debtor to show that relief from the stay is unwarranted. _Plumberex_, 311 B.R. at 557 (citing _Sonnax_,

28   907 at 1285; _In re Duvar Apt, Inc._, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996)).  If the movant fails

1   to meet its initial burden to demonstrate cause, relief from the automatic stay must be denied.

2   *Plumberex*, 311 B.R. at 557.

3          What constitutes adequate "cause" to grant relief from the automatic stay is decided on a

4   case-by-case basis.  *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (citing *Christensen*

5   *v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990)).  In

6   determining whether relief from the automatic stay should be granted to allow state court

7   proceedings to continue, considerations such as judicial economy, the expertise of the state court,

8   prejudice to the parties and whether exclusively bankruptcy issues are involved should be taken

9   into account.  *In re Kronemyer*, 405 B.R. at 921 (citing *MacDonald v. Macdonald (In re*

10  *MacDonald),* 755 F.2d 715, 717 (9th Cir. 1985); *Ozai v. Tabuena (In re Ozai)*, 34 B.R. 764, 766

11  (B.A.P. 9th Cir. 1983)).

12         The factors articulated in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (the

13  "*Curtis* Factors") are "appropriate, nonexclusive, factors to consider in deciding whether to grant

14  relief from the automatic stay to allow pending litigation to continue in another forum." *In re*

15  *Kronemyer*, 405 B.R. at 921.  Not all twelve *Curtis* Factors are relevant in every case, and a court is

16  not required to give each of the *Curtis* Factors equal weight in making its determination.  *In re*

17  *Plumberex Specialty Products, Inc.*, 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004) (citing *Sonnax*

18  *Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d

19  Cir. 1990)).  As the *Curtis* court noted, "the most important factor in determining whether to grant

20  relief from the automatic stay to permit litigation against the debtor in another forum is the effect of

21  such litigation on the administration of the estate... even slight interference with the administration

22  may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis,* 40 B.R.

23  at 800.

24         Here, an analysis of the relevant *Curtis* factors shows that the Movants have not met their

25  burden of proof by establishing a prima facie case for relief from stay to proceed with the

26  Arbitration.

27  / / /

28  / / /

1      **1.    The lack of any connection with or interference with the bankruptcy case**

2           The Trustee's primary duty under 11 U.S.C. § 704(a) is to "collect and reduce to money the

3      property of the estate for which such trustee serves, and close such estate as expeditiously as is

4      compatible with the best interests of parties in interest."  Granting stay relief would interfere with

5      the Trustee's primary duty and force her to expend resources in a lawsuit that has no benefit to the

6      Debtor's estate.  Stay relief would therefore prejudice the interests of other creditors and interested

7      parties in the Debtor's bankruptcy case.

8      **2.    Whether the foreign proceeding involves the debtor as a fiduciary**

9           This factor is not applicable.

10     **3.    Whether a specialized tribunal has been established to hear the particular**

11     **cause of action and whether that tribunal has the expertise to hear such cases**

12          Bankruptcy courts and state courts have equal expertise in resolving disputes like those at

13     issue in the Arbitration.  An arbitration is not a special tribunal to hear these claims.  This factor

14     does not weigh in favor of stay relief.

15     **4.    Whether the debtor's insurance carrier has assumed full financial**

16     **responsibility for defending the litigation**

17          This factor is not applicable.

18     **5.    Whether the action essentially involves third parties, and the debtor functions**

19     **only as a bailee or a conduit for the goods or proceeds in question**

20          The Debtor has a direct pecuniary/financial interest in the Arbitration and is not a mere

21     bystander.  The Debtor was a member of the Joint Venture.  The Joint Venture and litigation over it

22     is the primary cause of the bankruptcy filing.  The parties both believe they are entitled to damages

23     against the other.  See Schedule A/B, doc. no. 13, no. 74 (causes of action).  In any event, the

24     Arbitration at its core involves the Debtor and Mandel.  This factor does not support lifting the

25     automatic stay.

26     / / /

27     / / /

28     / / /

1727077.3  27180                              11

**6.**   **Whether the litigation in another forum would prejudice the interests of the other creditors, the creditors' committee and other interested parties**

As noted above, the Trustee has had insufficient time and currently lacks the resources to participate actively in the Arbitration.  As a result, granting relief from stay at this time would effectively allow the Arbitration to resolve issues of vital importance to this estate without the Trustee's involvement.  The Trustee is trying to not let the same litigation that apparently pushed the Debtor into bankruptcy to render the estate insolvent and interfere with the estate's ability to benefit other creditors. Accordingly, stay relief would be prejudicial to the interests of creditors. This factor mitigates strongly against lifting the stay.

**7.**   **Whether the relief will result in a partial or complete resolution of the issues**

Relief from stay would permit the Arbitration to proceed to judgment on all the issues between the Debtor and Mandel.  However, as set forth above, if relief were granted the estate would be severely prejudiced because the Trustee would be unable to meaningfully participate in Arbitration at this time.  This factor also weighs against lifting the stay.

**8.**   **Whether the judgment claim arising from the foreign action is subject to equitable subordination**

This factor is not applicable.

**9.**   **Whether movant's success in the foregoing proceeding would result in a judicial lien avoidable by the debtor under section 522(f)**

This factor is not applicable because the Debtor is not an individual entitled to assert exemptions.

**10.**   **The interests of judicial economy and the expeditious and economical determination of litigation for the parties**

At an appropriate point of time—after the Trustee has completed her investigation, exhausted settlement efforts, and evaluated any proofs of claim—it might be in the interests of judicial economy to permit the Arbitration to proceed.  That time has not arrived, and is not likely to be anytime soon.  This factor also weighs against lifting the stay.

/ / /

1    **11.    <u>Whether the foreign proceedings have progressed to the point where the</u>**

2    **<u>parties are prepared for trial</u>**

3    The Arbitrator was only appointed on May 3, 2023 – less than 60 days before the

4    bankruptcy filing.  The Trustee is not prepared for trial, and is not going to be anytime soon.  The

5    Trustee could not be in a position to appear and participate in the trial that is scheduled to go

6    forward on <u>October 9, 2023</u>.  The Trustee has also not located or retained counsel to represent her

7    in the Arbitration, and the Court has also not authorized the Trustee to employ special litigation

8    counsel to represent her in the Arbitration.  The Trustee does not know when, if ever, the Trustee

9    will be in a position to participate in the Arbitration.  This factor also weighs against lifting the

10    stay.

11    **12.    <u>The impact of the stay and the "balance of the hurt"</u>**

12    As noted above, stay relief would interfere with the Trustee's administration of the estate

13    and severely prejudice the rights of the trustee with respect to the estate's interest in the Joint

14    Venture, and hurt all other creditors of the estate.  Stay relief is particularly inappropriate so early

15    in the case, where the schedules were only filed two weeks ago and the initial 341(a) meeting

16    hasn't even occurred yet as of the date when this opposition is due.  In contrast, denial of relief

17    from stay will only temporarily affect the rights of the Movants by delaying the trial.  This factor

18    also weighs against lifting the stay.

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1

## III.

2

## CONCLUSION

3      WHEREFORE, based upon the above reasons, the Trustee respectfully requests that the

4  Court deny Mandel's RFS Motion.  The Trustee further prays for all other appropriate relief.

5

6  DATED:  August 29 2023                   DANNING, GILL, ISRAEL & KRASNOFF, LLP

7

8                                              By:  _____

9                                                    ERIC P. ISRAEL
                                                     AARON E. DE LEEST
10                                                   Attorneys for Carolyn A. Dye, Chapter 7 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1727077.3  27180                                14

# DECLARATION OF CAROLYN A. DYE

I, Carolyn A. Dye, declare:

1.      I am the Chapter 7 trustee of the estate of James Capital Advisors, Inc., the debtor in the within bankruptcy case (the "Debtor").  I have personal knowledge of the facts stated in the above opposition and in this declaration, except those matters that are based upon my information and belief, and as to such matters, I believe such matters to be true.  If called as a witness, I could testify competently to these facts.

2.      This declaration is being filed in support of my above opposition to the Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (*doc. no. 30*) filed by James Mandel JV, LLC (the "Joint Venture") and Chelsea Mandel II LLC (jointly and severally, "Mandel").

3.      The Debtor is a real estate brokerage firm.  In the ordinary course of its business, the Debtor, through its agents, facilitated real estate transactions between buyers and sellers of real property.  I am informed that, as of the Petition Date, the Debtor was the broker in not less than thirteen real estate transactions (the "Pending Transactions") and had the usual contractual rights under previous listings if any buyer identified under that listing agreement ultimately purchased the property at issue.

4.      I have engaged bankruptcy counsel to assist me with the fulfillment of my duties under 11 U.S.C. § 704.  Consistent with my duties, I am diligently working to liquidate the estate's assets, to account for the Debtor's property, investigate the Debtor's business and financial affairs, and perform other activities attendant with a chapter 7 trustee's fiduciary role.

5.      I have been communicating regularly with the Debtor's administrative employees, the Debtor's bankruptcy counsel, and a number former agents of the Debtor who are responsible for the Pending Transactions.  Among other activities, I am focused on helping the agents responsible for closing the Pending Transactions so that those agents and the estate can collect their shares of commission.

6.      My counsel and I have also been communicating extensively with Mandel's counsel, spending several hours listening to their concerns, in person, over the phone, and via videoconference.  I have been personally engaged in trying to negotiate resolutions with Mandel.

1   My counsel and I have received hundreds, if not thousands of pages of documents, over less than

2   one month involved in the case, from the Debtor and Mandel. My counsel and I have received and

3   replied to many dozens of email communications from Mandel's counsel over this time. To be

4   clear, I believe that the parties should be able to reach a global settlement without the necessity of

5   proceeding with the arbitration, but in terms of my ability to do so meaningfully, I am just "not

6   there" yet.

7          7.      I have not had sufficient time to analyze the issues raised in the Arbitration and have

8   not received sufficient information to satisfy my investigative mandate. For example, Mandel

9   seeks dissolution of the Joint Venture, most recently with an effective date of January 1, 2023, but I

10  do not know the value of the estate's 50% interest in the Joint Venture or what claims the Debtor,

11  Mandel and the Joint Venture may have against each other. Among other information I lack, is

12  information that would aid in the evaluation of the pipeline of the Joint Venture's business, bank

13  records or the complete accounting records of the Joint Venture for the last several months. I am

14  concerned that business of the Joint Venture may have been diverted to new ventures, and I need to

15  investigate these and other issues.

16         8.      In my judgment and experience as a lawyer and chapter 7 trustee, I believe a

17  reasonable trustee in this position would be unable to conclude such investigation and be in a

18  position to adequately address the concerns of the estate with respect to the issues presented by

19  Mandel in the limited time provided. I believe that an investigation of this nature may require  a

20  number of months and cooperation from those involved, such as Mandel, the Debtor and others. It

21  also may require the use of forensic accountants or experts.

22         9.      I am not now, and will not soon be, in a position to defend the estate in the

23  Arbitration, to determine whether it is appropriate to engage special counsel for the Arbitration, or

24  take any other action with respect to the Arbitration other than oppose relief from stay. It is too

25  early in the case for me to take a position or to know how such position will impact the estate, such

26  as whether defending or prosecuting any position will generate economic benefit to the estate.

27         10.     I am concerned that the amount of time taken in litigating with Mandel will interfere

28  with my ability to administer the estate for the benefit of all creditors, in addition to being

1727077.3  27180                                16

1 premature, as I have not had an adequate opportunity to investigate the facts concerning the

2 disputes with Mandel.

3

4       I declare under penalty of perjury under the laws of the United States of America that the

5 foregoing is true and correct.

6       Executed at Los Angeles, California on August 28, 2023.

7

8                                         _____

9                                           CAROLYN A. DYE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  Trustee's Notice of Opposition and Partial Opposition to Motion for Relief From Stay; Memorandum of Points and Authorities and Declaration of Carolyn A. Dye in Support Thereof  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 29, 2023  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  August 29, 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 29, 2023 | Gloria Ramos | /s/ Gloria Ramos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Brian K Condon**    Brian.Condon@arnoldporter.com, edocketscalendaring@arnoldporter.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Carolyn A Dye (TR)**    trustee@cadye.com, c197@ecfcbis.com;atty@cadye.com
- **Anthony A. Friedman**    aaf@lnbyg.com
- **Eric P Israel**    eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Amy Lee Nashon**    anashon@troygould.com
- **Zev Shechtman**    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

2. **SERVED BY U.S. MAIL**

James Capital Advisors, Inc.
10960 Wilshire Blvd
Suite 805
Los Angeles, CA  90024

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Royal Federal Building
255 E. Temple Street, Suite 1534
Los Angeles, CA  90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                      **F 9013-3.1.PROOF.SERVICE**