1   ERIC P. ISRAEL (State Bar No. 132426)
    *EPI@LNBYG.COM*
2   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
    2818 La Cienega Ave.
3   Los Angeles, California 90034
    Telephone: (310) 229-1234
4   Facsimile: (310) 229-1244

5   Attorneys for Carolyn A. Dye, Trustee

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                  **LOS ANGELES DIVISION**

| | |
|---|---|
| 10 In re | Case No. 2:23-bk-14820-BB |
| 11 JAMES CAPITAL ADVISORS, INC., | Chapter 7 |
| 12     Debtor. | **TRUSTEE'S NOTICE OF MOTION AND MOTION TO APPROVE SETTLEMENT WITH MICHAEL JAMES; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF CAROLYN A. DYE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |
| | Date:     August 20, 2025 |
| | Time:     1:00 p.m. |
| | Place:    Courtroom 1539 |
| |           255 E. Temple St. |
| |           Los Angeles, CA 90012 |

20          NOTICE IS HEREBY GIVEN that on August 20, 2025, at 1:00 p.m., or as soon thereafter

21   as the matter may be heard, in Courtroom 1539 at 255 E. Temple Street, Los Angeles, California,

22   Carolyn A. Dye, the Chapter 7 trustee (the "Trustee") for James Capital Advisors, Inc. (the

23   "Debtor"), will and hereby does move the Court for an order (the "Motion") approving a written

24   settlement agreement (the "Agreement") between the Trustee and Michael James ("James").

25          The Motion is made on the following grounds:  The Trustee believes that she has certain

26   claims against James, who was the Debtor's chief executive officer.  Among other things, the

27   Trustee has asserted that:  (1) she has a right to avoid a net insider preference to James in the

28   amount of $168,796.18; and (2) she has raised issues with the following proofs of claim which

                                            1

1  James or entities he owns and controls have filed against the Debtor's estate (collectively the

2  "James Proofs of Claim"):

3      a.    On or about October 8, 2023, a proof of claim assigned claim no. 11 in the name of

4  "Mike James NNN, Inc." as a general, unsecured claim for $115,000 which recites that it is on

5  account of a "note" ("Claim No. 11");

6      b.    On or about October 8, 2023, a proof of claim assigned claim no. 12 in the name of

7  "Mike James" as a general, unsecured claim for $50,308.64 which recites that it is for "salary

8  "("Claim No. 12");

9      c.    On or about October 8, 2023, a proof of claim assigned claim no. 13 in the name of

10  "James Capital Inc." as a general, unsecured claim for $1,875,000 which recites that it is on

11  account of a "loan" ("Claim No. 13"); and

12      d.    On or about October 19, 2023, a proof of claim assigned claim no. 17 in the name

13  of "James Capital Management, LLC." as a general, unsecured claim for $12,428.09 which recites

14  that it is on account of "services performed" ("Claim No. 17").

15      James advises that earlier in 2025 he paid approximately $190,000 (the "SBA Payment") to

16  pay off a loan by the Debtor in favor the Small Business Administration (the "SBA").  The SBA

17  asserted a blanket lien against the Debtor's assets to secure that loan (the "SBA Lien").  The SBA

18  has confirmed that the loan has been paid off and has withdrawn its proof of claim.

19      The Trustee has succeeded in negotiating a compromise of issues with James whereby the

20  parties agree to a full walk-away settlement.  The Trustee will not sue James to avoid the Subject

21  Transfer, James will waive any subrogation rights he has on account of the SBA Payment, James

22  will withdraw the James Proofs of Claims and waive any claims against the estate, and the parties

23  will trade full, mutual releases.

24      The Trustee seeks approval of the Agreement by the Motion.

25      The Motion will be based on the within Motion, the Memorandum of Points and

26  Authorities, the Declaration of Carolyn A. Dye and the Request for Judicial Notice, all of which are

27  attached to the Motion, the papers and pleadings in the Debtor's bankruptcy case, and such other

28  evidence that may be presented at the hearing.  For further information, see the Motion.

NOTICE IS HEREBY FURTHER GIVEN that, pursuant to Local Bankruptcy Rule 9013-1(f), any response to the Motion shall be in writing, filed with the Court and served upon counsel for the Trustee named in the upper left-hand corner of this notice, and the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, California 90017, not later than 14 days before the hearing.  Failure to do so may be deemed to be consent to the granting of the Motion.

DATED:  July 22, 2025

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:  _____/s/ Eric P. Israel_____
ERIC P. ISRAEL
Attorneys for Carolyn A. Dye, Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### III.

### STATEMENT OF FACTS

**B.      Bankruptcy Background**

On July 31, 2023 (the "Petition Date"), James Capital Advisors, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Carolyn A. Dye was appointed and continues to serve as the Chapter 7 Trustee for the Debtor's estate.

At all relevant times through the Petition Date, Michael James ("James") was the Debtor's Chief Executive Officer.

**C.      The Preferential Transfer**

On or about May 6, 2022, James loaned $250,000 to the Debtor.

On or about January 18, 2023, the Debtor repaid the $250,000 plus interest of $29,796.18, for a total of $279,796.18 (the "Subject Transfer").

On or about May 31, 2023, James loaned the Debtor another $115,000.  That $115,000 was never repaid.

The Trustee has asserted that James is liable for a net insider preference on account of the Subject Transfer of $168,796.18.

**D.      SBA Loan Payoff**

The Debtor borrowed $150,000 from the Small Business Administration (the "SBA") in approximately May 29, 2020 (the "SBA Loan").  The SBA filed a proof of claim against the Debtor's estate in the sum of $163,136.26 on account of the SBA Loan as a secured claim, which

4

1  was assigned claim no. 4 (the "SBA Proof of Claim").  The SBA asserted a blanket lien against all

2  of the Debtor's assets to secure the SBA Loan.

3      James advises and represents that he paid off the SBA Loan in full in the sum of

4  approximately $190,000 in early 2025 (the "SBA Payment").  The SBA recently withdrew the SBA

5  Proof of Claim.

6  **E.**    **James' Proofs of Claims against the Estate**

7      James has filed the following proofs of claim against the Debtor's estate (collectively the

8  "James Proofs of Claim"):

9          a.    On or about October 8, 2023, a proof of claim assigned claim no. 11 in the

10         name of "Mike James NNN, Inc." as a general, unsecured claim for $115,000 which recites

11         that it is on account of a "note" ("Claim No. 11");

12         b.    On or about October 8, 2023, a proof of claim assigned claim no. 12 in the

13         name of "Mike James" as a general, unsecured claim for $50,308.64 which recites that it is

14         for "salary "("Claim No. 12");

15         c.    On or about October 8, 2023, a proof of claim assigned claim no. 13 in the

16         name of "James Capital Inc." as a general, unsecured claim for $1,875,000 which recites

17         that it is on account of a "loan" ("Claim No. 13"); and

18         d.    On or about October 19, 2023, a proof of claim assigned claim no. 17 in the

19         name of "James Capital Management, LLC." as a general, unsecured claim for $12,428.09

20         which recites that it is on account of "services performed" ("Claim No. 17").

21  **F.**    **The Proposed Settlement**

22      Without the need for commencing litigation, the Trustee has negotiated a proposed

23  settlement with James that has been documented in a written agreement attached to the Dye

24  Declaration as Exhibit "1" (the "Agreement").  Without limiting the terms of the Agreement, it

25  provides for a full walk-away with James as follows:  (1) the Trustee will not pursue preference

26  claims for the Subject Transfer; (2) James waives any subrogation rights as to the SBA Payment;

27  (3) James agrees to withdraw each of the James Proofs of Claims, and (4) the parties trade full,

28  mutual releases.  For further information, see the Agreement.

**G.    Requested Relief**

The Trustee respectfully requests that the Court grant this motion and approve the

Agreement.  The Trustee further prays for all other appropriate relief.

**IV.**

**ARGUMENT**

**B.    Approval of the Agreement between the Trustee and the Obligors is Warranted**

The Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 1334

and 157 and Federal Rules of Bankruptcy Procedure 9019.  This is a core proceeding under 28

U.S.C. § 157(b)(2)(A), (B), (C), (F), (K) and (O).

Federal Rule of Bankruptcy Procedure 9019(a) provides:  "On motion by the trustee and

after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a)

and to such other entities as the court may designate, the court may approve a compromise or

settlement."

The Supreme Court, in *Protective Committee for Independent Stockholders of TNT Trailer

Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968), held that a bankruptcy court, in considering

whether to approve a compromise, should:

> apprise [itself] of all facts necessary for an intelligent and objective
> opinion of the probabilities of ultimate success should the claim be
> litigated.  Further, the judge should form an educated estimate of the
> complexity, expense and likely duration of such litigation, the
> possible difficulties in collection on any judgment which might be
> obtained, and all other factors relevant to a full and fair assessment
> of the wisdom of the proposed compromise.

The Ninth Circuit has clarified the inquiry as follows:

> In determining the fairness, reasonableness and adequacy of a
> proposed compromise, the court must consider:  (a) probability of
> success in litigation, (b) the difficulties, if any, to be encountered in
> the matter of collection, (c) the complexity of litigation involved,
> and the expense, inconvenience and delay necessarily attending it,
> and (d) the paramount interest of the creditors and a proffered
> deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citations omitted), *cert. denied*, 479

U.S. 854, 107 S. Ct. 189 (1986).

The Trustee, the party proposing the compromise, admittedly has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. *Id.* Although "the objections of creditors to the compromise must be afforded due deference, such objections are not controlling . . . [W]hile the court must preserve the rights of the creditors, it must also weigh certain factors to determine whether the compromise is in the best interest of the bankrupt estate." *Id.* at 1382 (citations omitted).

The bankruptcy court has wide latitude and discretion in evaluating a proposed compromise because the judge is "uniquely situated to consider the equities and reasonableness." *United States v. Alaska National Bank (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (citations omitted).  The Ninth Circuit has further stated:

> A compromise agreement allows the trustee and the creditors to avoid the expenses and burdens associated with litigating "sharply contested and dubious" claims.  (citations omitted)  The bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim.  (citations omitted)  It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a "substantial foundation" and is not "clearly invalid as a matter of law," or (2) the outcome of the claim's litigation is "doubtful."  (citations omitted).

*Id.* at 1328.

It is also true that the Court is not "to decide the numerous questions of law and fact raised by [objectors] but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984) (quoting *In re W. T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (emphasis added), *cert. denied*, 464 U.S. 822, 104 S. Ct. 89 (1983)), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

1.    Probability of Success in Litigation

The Trustee believes that she would succeed on the $168,796.18 insider preference claim, although as with any litigation there is always a risk of loss, cost of litigation and delays.  The Trustee believes that James as a result of the SBA Payment could be subrogated to the rights of the SBA, allowing him to stand in the shoes of the SBA and assert a lien against the Debtor's assets for approximately $190,000.  The Trustee currently holds approximately $201,741.096 in the Estate.

With respect to the James Proofs of Claim, James directly and indirectly holds significant claims against the estate.  Waiving those claims without litigation should be a substantial benefit to other creditors and the estate.

The Trustee believes that this factor weighs in favor of the proposed settlement.

2.    Complexity of the Litigation Involved

The Trustee does not believe that the issues are particularly complex.  The Subject Transfer is outside the 90 day period where the Trustee would have a presumption of insolvency, so the Trustee would need to affirmatively prove that element of her claim for relief.  Although she believes that she would be successful proving insolvency approximately 6 months prior to the bankruptcy filing, the Trustee would need to have an expert do the analysis and present evidence thereon.  This would add to the administrative expenses of the estate.

The Trustee believes that this factor further supports the proposed settlement.

3.    Difficulties in Collection

The Trustee does not have information on James' collectability, but she assumes that he could satisfy a judgment if the Trustee were forced to litigate the insider preference claim.

The Trustee believes that this factor is neutral.

4.    Paramount Interest of Creditors

The proposed settlement will free up all of the funds in the estate to be free and clear of liens, without the delays and costs attendant to litigation.  It will also reduce the creditor body significantly and allow the Trustee to complete administration of the Debtor's Estate sooner.

The Trustee submits that this factor strongly supports a settlement.

5.    The Compromise Should be Approved

For all these reasons, the Trustee believes that the compromise is fair and equitable to the estate and should be approved.

/ / /

/ / /

/ / /

/ / /

## V.

## CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Court:

1.      Grant the Motion in its entirety;

2.      Approve the Agreement;

3.      Authorize the Trustee to take any and all steps necessary to effectuate the Agreement;

4.      Approve the sufficiency of the notice of hearing on the Motion, a copy of which is attached hereto as Exhibit "3"; and

5.      Provide such other and further relief as the Court deems just and proper.


DATED:  July 22, 2025              LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:          */s/ Eric P. Israel*
              ERIC P. ISRAEL
              Attorneys for Carolyn A. Dye, Chapter 7 Trustee

## DECLARATION OF CAROLYN A. DYE

I, Carolyn A. Dye, declare as follows:

1. I am the Chapter 7 trustee for James Capital Advisors, Inc. (the "Debtor"). I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters to be true. If called as a witness, I could testify competently to these facts.

2. This declaration is being filed in support of my Motion to Approve Settlement with Michael James (the "Motion").

**The Preferential Transfer**

3. My accountants have advised me that the Debtor's books and records reflect the following transactions:

      (a)     On or about May 6, 2022, James loaned $250,000 to the Debtor.

      (b)     On or about January 18, 2023, the Debtor repaid the $250,000 plus interest of $29,796.18, for a total of $279,796.18 (the "Subject Transfer").

      (c)     On or about May 31, 2023, James loaned the Debtor another $115,000.

4. I have asserted that James is liable for an insider preference of $168,796.18.

**SBA Loan Payoff**

5. From my investigation, I understand that the Debtor borrowed $150,000 from the Small Business Administration (the "SBA") in approximately May 29, 2020 (the "SBA Loan"). The SBA filed a proof of claim against the Debtor's estate in the sum of $163,136.26 as a secured claim, which was assigned claim no. 4 (the "SBA Proof of Claim"). The SBA asserts a blanket lien against all of the Debtor's assets based thereon.

6. James advises and represents that he paid off the SBA Loan in full in the sum of approximately $190,000 in early 2025 (the "SBA Payment"). The SBA recently withdrew the SBA Proof of Claim.

7. I understand that James was the Chief Executive Officer of the Debtor at all relevant times.

1       8.    I am holding approximately $201,741.06 in the Estate at this time.  The SBA Lien

2   was the only remaining lien against assets of the Estate.

3       **The Proposed Settlement**

4       9.    Through counsel, subject to Court approval, I negotiated a proposed settlement with

5   James that has been documented in a written agreement (the "Agreement").

6       10.    I am familiar with the terms of the Agreement.  I believe that the settlement set forth

7   in the Agreement is fair and equitable and in the best interest of the bankruptcy estate for the

8   reasons set forth in the Motion.  A true and correct copy of the Agreement is attached hereto as

9   Exhibit "1."  I request that the Court approve the Agreement.

10

11      I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct.

13      Executed at Van Nuys, California, on July 22, 2025.

14

15                            CAROLYN A. DYE

16

17

18

19

20

21

22

23

24

25

26

27

28

## REQUEST FOR JUDICIAL NOTICE

Carolyn A. Dye, the Chapter 7 trustee herein (the "Trustee"), respectfully requests that the Court take judicial notice of the following facts in the Court's file in this case:

**A.    Bankruptcy Background**

1.    On July 31, 2023 (the "Petition Date"), James Capital Advisors, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Carolyn A. Dye was appointed and continues to serve as the Chapter 7 Trustee for the Debtor's estate.

**B.    The SBA Proof of Claim**

2.    The Small Business Administration (the "SBA") filed proof of claim no. 4 against the Debtor's estate (the "SBA Proof of Claim").  According to the SBA Proof of Claim, the Debtor borrowed $150,000 from the SBA in approximately May 29, 2020 (the "SBA Loan").  The SBA Proof of Claim asserts that the SBA has a blanket lien against all of the Debtor's assets based thereon.

3.    On or about July 16, 2025, the SBA withdrew the SBA Proof of Claim.

**C.     James' Proofs of Claims against the Estate**

4.    James has filed the following proofs of claim against the Debtor's estate (collectively the "James Proofs of Claim"):

a.    On or about October 8, 2023, a proof of claim assigned claim no. 11 in the name of "Mike James NNN, Inc." as a general, unsecured claim for $115,000 which recites that it is on account of a "note" ("Claim No. 11");

b.    On or about October 8, 2023, a proof of claim assigned claim no. 12 in the name of "Mike James" as a general, unsecured claim for $50,308.64 which recites that it is for "salary "("Claim No. 12");

c.    On or about October 8, 2023, a proof of claim assigned claim no. 13 in the name of "James Capital Inc." as a general, unsecured claim for $1,875,000 which recites that it is on account of a "loan" ("Claim No. 13"); and

d.      On or about October 19, 2023, a proof of claim assigned claim no. 17 in the name of "James Capital Management, LLC." as a general, unsecured claim for $12,428.09 which recites that it is on account of "services performed" ("Claim No. 17").

**D.     <u>Notice</u>**

5.      A true and correct copy of the notice the Trustee intends to serve of the Motion is attached hereto, marked as Exhibit "3" and incorporated herein by this reference.


DATED:  July 22, 2025                         LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:     _/s/ Eric P. Israel_____
            ERIC P. ISRAEL
            Attorneys for Carolyn A. Dye, Trustee

13

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between Carolyn A. Dye, solely in her capacity as the Chapter 7 trustee (the "Trustee") for the estate of James Capital Advisors, Inc. (the "Debtor"); and Michael James ("James") (collectively the "Parties").

## RECITALS

**WHEREAS**, on July 31, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, case no. 2:23-bk-14820-BB (the "Debtor's Case");

**WHEREAS**, Carolyn A. Dye accepted appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors (the "Debtor's Estate");

**WHEREAS**, before the Debtor's Case was filed, James was the Chief Executive Officer of the Debtor;

**WHEREAS**, on or about May 6, 2022, James loaned $250,000 money to the Debtor;

**WHEREAS**, on or about January 18, 2023, the Debtor repaid the $250,000 plus interest of $29,796.18, for a total of $279,796.18 (the "Subject Transfer");

**WHEREAS**, on or about May 31, 2023, James loaned the Debtor another $115,000;

**WHEREAS**, James caused the following proofs of claim to be filed against the Debtor's Estate (collectively the "James Proofs of Claims"):

    a. On or about October 8, 2023, a proof of claim assigned claim no. 11 in the name of "Mike James NNN, Inc." as a general, unsecured claim for $115,000 which recites that is on account of a "note" ("Claim No. 11");

    b. On or about October 8, 2023, a proof of claim assigned claim no. 12 in the name of "Mike James" as a general, unsecured claim for $50,308.64 which recites that it is for "salary "("Claim No. 12");

    c. On or about October 8, 2023, a proof of claim assigned claim no. 13 in the name of "James Capital Inc." as a general, unsecured claim for $1,875,000 which recites that it is on account of a "loan" ("Claim No. 13"); and

    d. On or about October 19, 2023, a proof of claim assigned claim no. 17 in the name of "James Capital Management, LLC." as a general, unsecured claim for $12,428.09 which recites that it is on account of "services performed" ("Claim No. 17").

**WHEREAS**, James advises and represents that earlier in 2025 he personally paid off a $150,000 loan the Debtor obtained from the Small Business Association (the "SBA" and the "SBA Loan", respectively), plus another approximately $40,000 to cover interest and costs, for a total James paid the SBA of approximately $190,000 (collectively the "SBA Payments");

**WHEREAS**, the SBA filed a proof of claim against the Debtor's Estate which was assigned claim no. 4 as a secured claim in the sum of $163,136.26 as of January 13, 2024 (the "SBA Proof of Claim"); and

**WHEREAS**, among other things, the Trustee has asserted that: (1) she has a right to avoid a net preference to James in the amount of $168,796.18; and (2) she has raised issues with the James Proofs of Claims; and James advises that he made the SBA Payments;

**WHEREAS**, James asserts he has valid and legitimate defenses to any preference claims;

**NOW, THEREFORE**, following arms'-length negotiations, and in consideration of the promises and representations contained herein, and for other good and valuable consideration, the Parties agree, subject to Bankruptcy Court approval, as follows:

## 1.    BANKRUPTCY COURT APPROVAL AND EFFECTIVE DATE

1.1    <u>Bankruptcy Court Approval</u>. The terms of this Agreement and the effectiveness thereof are contingent upon the entry of an order by the Bankruptcy Court in the Debtor's Case approving this Agreement (the "Approval Order"). The Trustee shall file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Debtor's Case seeking such approval ("Approval Motion") pursuant to the terms set forth in this Agreement.

1.2    <u>Cooperation/Further Acts</u>. The Parties agree to cooperate fully and execute and deliver any and all supplementary documents and to take such additional actions which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement and to implement it.

1.3    <u>Effective Date.</u> The date on which the Agreement becomes effective (the "Effective Date") shall be the first business day which is more than fourteen (14) calendar days after the date of entry of the Approval Order, provided that no stay of the Approval Order has been granted.

## 2.    FULL WALK-AWAY SETTLEMENT

2.1    <u>Settlement</u>. The Trustee agrees to not pursue a preference claim against James for the $168,795.18 for the Subject Transfer net of the $115,000 Loan; James agrees to waive any right to recover from the Debtor's Estate on account of the SBA Payment; and James agrees to cause the withdrawal of each of the James Proofs of Claims.

## 3.    WAIVER OF CLAIMS

3.1    <u>Waiver of Claims</u>. James hereby waives any claim against the Debtor's Estate, including without limitation waiving the James Proofs of Claim. James agrees to

withdraw the James Proofs of Claims within 7 calendar dates of the Effective Date.

**4.    RELEASES**

4.1    <u>James' Release</u>. Other than with respect to the obligations arising under this Agreement, effective on the Effective Date, James, on behalf of himself, his present and former attorneys, heirs, executors, administrators, representatives, predecessors, successors, and assignees, and all entities he owns or controls, hereby irrevocably and unconditionally releases and forever discharges Carolyn A. Dye, both personally and in her capacity as Trustee, and the Debtor's Estate, and all of their predecessors, successors, assigns, attorneys and agents, from any and all claims and liabilities of any nature.

4.2    <u>Release by Trustee</u>.  Other than with respect to obligations arising under this Agreement, effective on the Effective Date, the Trustee, on behalf of herself and the Debtor's Estate, hereby releases James, Mike James NNN, Inc., James Capital, Inc., and James Capital Management, LLC, together with any of their attorneys and agents, predecessors, successors and assigns, from any and all claims and liabilities of any nature.  Notwithstanding this release, the Trustee is not waiving any right to recover assets of the Debtor that have not been scheduled.

4.3    <u>Effect of Releases</u>.  The Parties both acknowledge that they are familiar with Section 1542 of the California Civil Code, which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

4.4    With respect to the claims being released pursuant to this Section 5, the Parties each acknowledge that they are each releasing unknown claims and waive all rights they have or may have under California Civil Code Section 1542 or any similar state or local statute or ordinance under applicable law or other common law principle of similar effect.

4.5    The Parties each acknowledge that this general release extends to claims which they do not know or suspect to exist in favor of each of them at the time of executing this Agreement, which if known may have materially affected their decision to enter into this Agreement.  It is understood by the Parties that the facts

3

in respect of which this Agreement is given may hereafter turn out to be other than or different from the facts in that connection known or believed to be true.  The Parties therefore, expressly assume the risk of the facts turning out to be so different and agree that this Agreement shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

4.6    Nothing herein is intended to, or shall be construed to, release, waive or otherwise affect the Parties' rights and obligations under this Agreement.

## 5.    REPRESENTATIONS

5.1    Each Party represents, certifies and warrants to the other Party that, subject to obtaining necessary approval of the Bankruptcy Court: (a) she or it has obtained all necessary authorizations or consents to enter into this Agreement; (b) no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement; (c) she or it has the sole right and exclusive authority to execute this Agreement and to release the claims as set forth herein; (d) the individual signing below on behalf of the Party is the duly authorized agent of the Party, granted express authority by the Party to enter into and be bound by this Agreement; and (e) no portion of any claim, right, action or cause of action that has been released by the Party has been assigned or transferred by or for the Party in any manner.

5.2    Each Party represents, certifies and warrants to the other Party that he or she: (a) has had an opportunity to read all of this Agreement; (b) has been given a fair opportunity to, and have been advised to, discuss and negotiate the terms of this Agreement by and through his legal counsel; (c) has been given a reasonable time to consider the Agreement; (d) understands the provisions of this Agreement; (e) has had ample opportunity to seek and has received advice from an attorney of her or his own choosing or other advisors regarding this Agreement or have otherwise waived his right to do so; (f) has determined that it is in his best interests to enter into this Agreement; (g) has not been influenced to sign this Agreement by any statement or representation by the other Party or their legal counsel or other representation not contained in this Agreement; (h) has had sufficient time to investigate the existence of the claims and other rights covered by the covenants he or she has given and has satisfied himself with respect to the same based upon his investigation and the advice of counsel; (i) is fully authorized to execute this Agreement in the capacity in which it is executed; and (j) enters into this Agreement knowingly and voluntarily without coercion, duress, or fraud, and without reliance upon any statement of or information received from any other Party or from counsel for any other Party that is not expressly reflected herein. There have been no written or oral representations made to any Party to induce them to execute this Agreement that are not expressly reflected herein.

5.3    James expressly represents and warrants that he has paid off the SBA Loan in full and agrees to cooperate as necessary to obtain the withdrawal of the SBA Proof of Claim.

**6.    TOLLING OF STATUTE OF LIMITATIONS**

6.1.1    Tolling.  James agrees that if for any reason the Court does not approve this Agreement, all statutes of limitation shall be tolled for 90 days following the date of entry of that order, and James waives any right to assert a statute of limitations defense for any claims for relief filed during that 90 day period.

**7.    GENERAL PROVISIONS**

7.1    <u>Integration</u>. This Agreement constitutes a single, integrated written contract expressing the full and entire agreement between the Parties with respect to the subject hereof and supersedes any prior representations, promises or warranties (oral or otherwise) made by any Party and supersedes any prior understandings or written or oral agreements between the Parties. No Party shall be liable or bound to the other Party for any prior representations, promises or warranties except those expressly set forth in this Agreement upon execution.

7.2    <u>Binding Agreement</u>. Upon approval of this Agreement by the Bankruptcy Court, this Agreement, and all of its terms and provisions, shall be applicable to, binding upon, and inure to the benefit of and be enforceable by the respective heirs, legal representatives, successors, transferees, trustees, assigns and licensees of the Parties, including, without limitation, the Debtor's Estate.

7.3    <u>Modification and Amendment</u>. No word, sentence, term, section, provision or condition of this Agreement may be altered, modified, supplemented, changed or terminated in any way whatsoever except by a writing signed by all of the Parties and approved by the Bankruptcy Court to the extent the Bankruptcy Court's approval is required.

7.4    <u>Costs and Fees</u>. Each Party shall bear her or his own costs, expenses and attorneys' fees arising out of, or in any way related to the matters covered by this Agreement.  However, notwithstanding the foregoing, the prevailing Party in any action for violation of, or to enforce, this Agreement shall be entitled to recover its reasonable costs, expenses and attorneys' fees incurred in that action.

7.5    <u>Governing Law</u>. This Agreement shall in all respects be interpreted, enforced and governed by the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, where applicable, and under the laws of the State of California, without regard to or application of conflict of laws rules.

7.6 <u>Venue</u>. Any action, suit or proceeding to enforce or defend any obligation under this Agreement shall be brought in the Bankruptcy Court.

7.7 <u>Severability/Invalidity</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid or unenforceable under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity or unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Agreement, with said remainder to remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.

7.8 <u>Headings</u>. The headings in this Agreement have been inserted solely for convenience and ease of reference and shall not be considered in the interpretation, construction or enforcement of this Agreement.

7.9 <u>Construction of Agreement</u>. Each Party and/or their respective legal counsel have reviewed and revised this Agreement and have had equal opportunity for input into this Agreement. Neither Party nor their respective legal counsel, if any, shall be considered or construed to be the drafter or primary drafter of this Agreement. In the event of any dispute regarding the construction of this Agreement or any of its provisions, ambiguities or questions of interpretation shall not be construed more in favor of one Party than the other; rather questions of interpretation or construction shall be construed equally as to each Party.

7.10 <u>Good Faith and Arm's Length</u>. Each Party represents and certifies that she or it is voluntarily entering into this Agreement in good faith. Each Party represents that this Agreement was negotiated at arm's length and between persons/entities sophisticated and knowledgeable in matters addressed in this Agreement. Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation or construction of any ambiguities in this Agreement against the Party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

7.11 <u>Counterparts</u>. The Parties agree that counterparts of this Agreement if signed and dated by the Parties shall be effective and treated as if a single, unitary document had been signed by all of the Parties. The Parties agree that electronic, photocopies or fax copies of original signatures shall be effective and binding in lieu of originals.

7.12 <u>Authority to Execute</u>. Each of the Parties represents and warrants to each other that the individual signing for and on behalf of him or her has complete and full authority to act on such Party's behalf and has the authority to bind all other persons or entities with any right, title or interest in that Party's claims.

7.13   <u>Reservation of Rights</u>. This Agreement is intended solely for the benefit of the Parties, and all rights not expressly released are reserved.

CAROLYN A. DYE, TRUSTEE                    MICHAEL JAMES

_____          _____
Dated: July ___, 2025                      Dated: July <u>21</u>, 2025

# EXHIBIT "2"

| Fill in this information to identify the case: |
|---|

Debtor 1    James Capital Advisors, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:23-bk-14820-BB

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

U.S. Small Business Administration (Federal government agency)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    SBA

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

U.S. Small Business Administration/Office of General Counsel - LADO
Name

312 N. Spring St., 5th Floor
Number    Street

Los Angeles    CA    90012
City    State    ZIP Code

Contact phone    213-634-3875

Contact email    anne.manalili@sba.gov

**Where should payments to the creditor be sent?** (if different)

U.S. Small Business Administration/Denver Finance Center*
Name

721 19th Street
Number    Street

Denver    CO    80202
City    State    ZIP Code

Contact phone    213-634-3875

Contact email    anne.manalili@sba.gov

**\*See, attached Additional Payment Instructions**

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☒ Yes.    Claim number on court claims registry (if known) 4-1

Filed on    08/24/2023
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.    Who made the earlier filing? _____

Official Form 410    **Proof of Claim**    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __7__ __8__ __0__ __4__

**7. How much is the claim?** $_____163,136.26  **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    All tangible and intangible personal property*

*Creditor is not seeking or claiming a security interest in Debtor's banking account(s) requiring a DACA or registered vehicle(s) by way of its recorded UCC-1 Statement security interest.

**Basis for perfection:**    Note, Security Agreement, and UCC-1 Financing Statement

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____613,708.25
**Amount of the claim that is secured:**    $_____163,136.26
**Amount of the claim that is unsecured:**  $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____0.00

**Annual Interest Rate** (when case was filed) 3.750 %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☐ No
☑ Yes. Identify the property: All money owed by the United States of America

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  __10/30/2023__<br> MM / DD / YYYY<br><br><br>__/s/ Anne C. Manalili_____<br> Signature |

**Print the name of the person who is completing and signing this claim:**

| Name | Anne C. Manalili | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | General Attorney | | |
| Company | U.S. Small Business Administration | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 312 N. Spring St., 5th Floor | | |
| | Number        Street | | |
| | Los Angeles | CA | 90012 |
| | City | State | ZIP Code |
| Contact phone | 213-634-3875 | Email | anne.manalili@sba.gov |

*In Re: James Capital Advisors, Inc.*

**Bankruptcy Case Number: 2:23-bk-14820-BB**

**Petition Date: 07.31.2023**

### Addendum to Proof of Claim of the U.S. Small Business Administration

**Amount due: $163,136.26**

| Unpaid Principal Balance as of Petition Date: | $ | 150,000.00 |
|---|---|---|
| Unpaid accrued interest to Petition Date: | $ | 13,136.26 |
| TOTAL* | $ | 163,136.26 |

**Interest Rate at Default:**      **3.750%**
**Per Diem Interest:**              **$15.41**

[*Plus all applicable <u>post-petition</u> accrued interest at the applicable interest rate provided for in the loan documents plus all other applicable charges and advances incurred as allowed under the Bankruptcy Code and the loan documents, less any funds received post-petition. Additionally, all damages, fines, and/or other penalties (which amounts are not yet liquidated) which may be discovered after an investigation is completed and may owed by Debtor shall be added to the claim amount.]

The U.S. Small Business Administration is an agency of the United States. This claim reflects the known liability of the debtor to this agency. The United States reserves the right to amend this claim to assert subsequently discovered liabilities.

### Summary of Statutory Claims

SBA asserts and preserves its statutory claims against the Debtor which are currently under investigation and therefore are unliquidated at this time. Those statutory claims include liabilities under: (i) 13 C.F.R. § 123.9; and (ii) 15 U.S.C. §§ 636 and 645. In addition to providing for recovery of SBA's actual losses, these statutes provide for the imposition of financial penalties, including fines and/or other penalties. These statutory claims concern SBA's continuing investigation into whether the Debtor misused/misapplied the proceeds of the EIDLs and/or SBA's collateral. At present, these claims are unliquidated.

### Reservation of Rights

The filing of this Proof of Claim is not intended to: (a) waive the right to seek withdrawal of the reference with respect to the subject matter of the Proof of Claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this proceeding against or otherwise involving SBA; or (b) constitute an election of remedies that waives or otherwise affects any other remedy.

SBA expressly reserves the right to amend, modify, and/or supplement this Proof of Claim at any time, for whatever reason.

SBA expressly reserves all rights of setoff and recoupment that the United States may have, including any right under 11 U.S.C. § 553 to setoff, against the claims herein, debts owed (if any) to Debtor by the United States, or any federal agency.

This claim is based upon a COVID-19 Economic Injury Disaster Loan (COVID EIDL). This loan was originally extended on **May 26, 2020**, in the principal amount of **$150,000.00**.

Due to the issuance of SBA Procedural Notice 5000-830558 (March 15, 2022), the monthly payments on this COVID EIDL were deferred to **December 18, 2022**, however interest continued to accrue during the deferment period.

## ADDITIONAL PAYMENT INSTRUCTIONS

**For check payments via mail delivery (including overnight delivery):**

    1)  Please <u>include loan number on the check(s)</u> and send to the following:

          U.S. Small Business Administration
          Denver Finance Center #7988
          721 19th St.
          Denver, CO 80202

    2)  For <u>payments on multiple loans,</u> please send <u>separate</u> checks

**For Online Payments:**

    **<u>Please pay via the MySBA Portal.</u>** This is the best and recommended method to pay. Borrowers can view their loan details and make payments via ACH and the processing times are quicker.  **Please have the borrower go to: https://lending.sba.gov and create an account.**



# **SBA Procedural Notice**

---

**TO:** All SBA Employees

**CONTROL NO.:** 5000-830558

**SUBJECT**: Additional 6-Month Deferment for SBA COVID-19 Economic Injury Disaster Loans

**EFFECTIVE:** March 15, 2022

---

The purpose of this Notice is to grant an additional 6-month deferment of principal and interest payments to SBA's existing[1] COVID-19 Economic Injury Disaster Loan (EIDL) borrowers (COVID EIDL Borrowers).

Due to the continued adverse effects of the COVID-19 emergency, SBA is extending the previous deferments granted to COVID EIDL Borrowers to provide an additional 6-month deferment of principal and interest payments on their COVID EIDLs. This 6-month deferment extension is effective for all COVID EIDLs approved in calendar years 2020, 2021 and 2022. COVID EIDLs have a total deferment of 30 months from the date of the Note.[2]

**COVID-EIDL Borrowers should be advised that:**
- Interest will continue to accrue on the loans during the deferment.
- Partial or full payments may be made (recommended to use [www.pay.gov](http://www.pay.gov)) during the deferment but are not required.
- SBA will not be sending monthly SBA Form 1201 payment notices (although SBA will send regular payment reminders).
- Account balances and payment due dates are accessible in the SBA Capital Access Financial System (CAFS). Borrowers may learn how to set up an account in the CAFS system by logging in at [https://caweb.sba.gov/cls/dsp_login.cfm](https://caweb.sba.gov/cls/dsp_login.cfm).
- Deferments may result in balloon payments.
- The deferment will not stop any established Preauthorized Debit (PAD) or recurring payments on the loan.  COVID EIDL Borrowers with an SBA established PAD must contact their SBA servicing center to stop recurring payments during the extended deferment period. COVID EIDL Borrowers that have established a PAD through

---

[1] Originated in calendar years 2020, 2021 or through the date of this Notice in 2022, and all COVID EIDLs originated in 2022 after the date of this Notice based on applications received by December 31, 2021.

[2] This additional deferment does not apply to non-COVID disaster home and business loans.

---

Pay.Gov or any other bill pay service are responsible for terminating recurring payments during the extended deferment period.

- After the deferment period ends, COVID EIDL Borrowers will be required to make regular principal and interest payments beginning 30 months from the date of the Note.

Questions regarding this Notice[3] should be directed to:

U.S. Small Business Administration
COVID-19 EIDL Customer Service Center
(Toll Free) 833-853-5638


Patrick  Kelley
Associate Administrator
Office of Capital Access

---

[3] See also SBA Procedural Notices 5000-20012, 5000-20072, and 5000-807838.

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete

Must be accompanied by SBA Form 58

SBA Loan #      7804                                                          Application #      1102

**U.S. Small Business Administration**

Economic Injury Disaster Loan

## LOAN AUTHORIZATION AND AGREEMENT

Date: 05.29.2020 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (SBA Loan #      7804) to James Capital Advisors, Inc (Borrower) of  10960 WILSHIRE BLVD # 805 LOS ANGELES California 90024 in the amount of one hundred and fifty thousand  and 00/100 Dollars ($150,000.00), upon the following conditions:

PAYMENT

- Installment payments, including principal and interest, of $731.00 Monthly, will begin Twelve (12) months from the date of the promissory Note. The balance of principal and interest will be payable Thirty (30) years from the date of the promissory Note.

INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations").  The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

-  For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

SBA Form 1391 (5-00)                                                          Ref 50 30

DocuSign Envelope ID:

SBA Loan #        7804                                                                                    Application #        1102

REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

- Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without the prior written consent of SBA.

USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement.** By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

SBA Form 1391 (5-00)                                                                                    Ref 50 30

DocuSign Envelope ID:

SBA Loan #       7804                                                                   Application #       1102

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

DUTY TO MAINTAIN HAZARD INSURANCE

- Within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

DocuSign Envelope ID:

SBA Loan #        7804                                                            Application #        1102

LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

-  All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application. All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

DocuSign Envelope ID:

| SBA Loan # | 7804 | | Application # | 1102 |
|---|---|---|---|---|

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

SBA Loan #        7804                                                                                    Application #        1102

## PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

## RESOLUTION OF BOARD OF DIRECTORS

- Borrower shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

_James E. Rivera_

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**James Capital Advisors, Inc**

DocuSigned by:

_Nathaniel Barnes_

B08A08339E9942E...

Date:        05.29.2020

Nathaniel Barnes, Owner/Officer

Note: Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

SBA Form 1391 (5-00)                                                                                    Ref 50 30

DocuSign Envelope ID:

SBA Loan #        7804                                                    Application #        1102

| | U.S. Small Business Administration | Date: 05.29.2020 |
|---|---|---|
| *(SBA logo)* | **NOTE** | Loan Amount: $150,000.00 |
| | (SECURED DISASTER LOANS) | Annual Interest Rate: 3.75% |

SBA Loan #        7804                                                    Application #        1102

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **one hundred and fifty thousand  and 00/100 Dollars ($150,000.00)**, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of this Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$731.00** every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor (if any); **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

SBA FORM 147 B (5-00)

DocuSign Envelope ID:

SBA Loan #       7804                                                    Application #       1102

7. **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **GENERAL PROVISIONS: A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one- half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**James Capital Advisors, Inc**

DocuSigned by:

*Nathaniel Barnes*

B08A08339E9942E...

Nathaniel Barnes, Owner/Officer

SBA FORM 147 B (5-00)

DocuSign Envelope ID:

| SBA Loan # | 7804 | Application # | 1102 |



## U.S. Small Business Administration
## SECURITY AGREEMENT

| SBA Loan #: | 7804 |
| --- | --- |
| Borrower: | James Capital Advisors, Inc |
| Secured Party: | **The Small Business Administration, an Agency of the U.S. Government** |
| Date: | 05.29.2020 |
| Note Amount: | $150,000.00 |

1.   **DEFINITIONS.**

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.   **GRANT OF SECURITY INTEREST.**

For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.   **OBLIGATIONS SECURED**.

This Agreement secures the payment and performance of: (a) all obligations under a Note dated 05.29.2020, made by James Capital Advisors, Inc , made payable to Secured Lender, in the amount of  $150,000.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.   **COLLATERAL DESCRIPTION.**

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

SBA Form 1059 (09-19) Previous Editions are obsolete.

DocuSign Envelope ID:

SBA Loan #        7804                                    Application #        1102

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5.        **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.        **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7.        **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8.        **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

SBA Form 1059 (09-19) Previous Editions are obsolete.

SBA Loan #        7804                                                                                          Application #        1102

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.      **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10.     **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.     **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.     **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.     **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Loan #        7804                                                    Application #        1102

14.    **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15.    **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.

**James Capital Advisors, Inc**

DocuSigned by:

*Nathaniel Barnes*

B08A08339E9942E...                                        Date:        05.29.2020

Nathaniel Barnes, Owner/Officer

SBA Form 1059 (09-19) Previous Editions are obsolete.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

1885 30626
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: California
(S.O.S.)

Initial Filing #: 207796537521
Initial Book #:
Initial Page #:
Initial Filing Date: 6/28/2020

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | James Capital Advisors, Inc | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/ INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 10960 WILSHIRE BLVD # 805 | CITY LOS ANGELES | STATE CA | POSTAL CODE 90024 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/ INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | U.S. Small Business Administration | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/ INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 10737 Gateway West, #300 | CITY El Paso | STATE TX | POSTAL CODE 79935 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.
EXEMPT Per California Government Code Section 6103 PLEASE EXPEDITE          7804

---

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:

1885 30626

---

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**
This document was auto-generated from data received from the California Department of State

# EXHIBIT "3"

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOLENE TANNER
Assistant United States Attorney
Chief, Tax & Bankruptcy Section
ELAN S. LEVEY (State Bar No. 174843)
Assistant United States Attorney
ANNE C. MANALILI (State Bar No. 193483)
Special Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 634-3875
    E-mail: anne.manalili@sba.gov

Attorneys for U.S. Small Business Administration

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re | Case No. 2;23-bk-14820-BB |
|---|---|
| JAMES CAPITAL ADVISORS, INC., | Chapter 7 |
| Debtor, | **WITHDRAWAL OF AMENDED PROOF OF CLAIM OF U.S. SMALL BUSINESS ADMINISTRATION (CLAIM #4-2)** |
| | **[No Hearing Required]** |

///

///

///

///

///

///

///

///

1

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE,**

**THE CHAPTER 7 TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

      The U.S. Small Business Administration hereby respectfully withdraws its amended proof of claim, identified as Claim # 4-2, filed on October 30, 2023.

Dated: July 16, 2025

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOLENE TANNER
Assistant United States Attorney
Chief, Tax & Bankruptcy Section


   /s/ Elan S. Levey
ELAN S. LEVEY
Assistant United States Attorney

and ANNE C. MANALILI
Special Assistant United States Attorney
ATTORNEYS FOR U.S. SMALL BUSINESS
ADMINISTRATION

S

2

PROOF OF SERVICE OF DOCUMENT

I am of the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 300 N. Los Angeles Street, Room 7211, Los Angeles, CA 90012

A true and correct copy WITHDRAWAL OF AMENDED PROOF OF CLAIM OF U.S. SMALL BUSINESS ADMINISTRATION (CLAIM #4-2) be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>: Pursuant controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>7/16/25</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eskandar Alex Beroukhim    alex.beroukhim@arnoldporter.com
Brian K Condon    brian.condon@arnoldporter.com, edocketscalendaring@arnoldporter.com,ecf-10cc1820d4f0@ecf.pacerpro.com,maousbccourts@arnoldporter.com
Carolyn A Dye (TR)    trustee@cadye.com, c197@ecfcbis.com;atty@cadye.com
Anthony A. Friedman    aaf@lnbyg.com
Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
Elan S Levey    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
Kerri A Lyman    klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com;mhernandez@steptoe.com;aodonnell@steptoe.com
Amy Lee Nashon    anashon@troygould.com
Michael Abtin Shakouri    mshakouri@goodkinlaw.com, mcortez@goodkinlaw.com
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
Richard P Steelman    RPS@LNBYG.COM
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2.  <u>SERVED BY UNITED STATES MAIL</u>:
On <u>7/16/25</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy se or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>7/16/25</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>7/16/25</u> | *Maria Luisa Parcon* | *Maria Luisa Q. Parcon* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "4"

ERIC P. ISRAEL (State Bar No. 132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Ave.
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Carolyn A. Dye, Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-14820-BB |
| JAMES CAPITAL ADVISORS, INC., | Chapter 7 |
| Debtor. | **TRUSTEE'S NOTICE OF HEARING ON MOTION TO APPROVE SETTLEMENT WITH MICHAEL JAMES** |
| | Date:    August 20, 2025<br>Time:    1:00 p.m.<br>Place:    Courtroom 1539<br>255 E. Temple St.<br>Los Angeles, CA 90012 |

NOTICE IS HEREBY GIVEN that on August 20, 2025, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1539 at 255 E. Temple Street, Los Angeles, California, Carolyn A. Dye, the Chapter 7 trustee (the "Trustee") for James Capital Advisors, Inc. (the "Debtor"), will and hereby does move the Court for an order (the "Motion") approving a written settlement agreement (the "Agreement") between the Trustee and Michael James ("James").

The Motion is made on the following grounds: The Trustee believes that she has certain claims against James, who was the Debtor's chief executive officer. Among other things, the Trustee has asserted that: (1) she has a right to avoid a net insider preference to James in the amount of $168,796.18; and (2) she has raised issues with the following proofs of claim which James or entities he owns and controls have filed against the Debtor's estate (collectively the "James Proofs of Claim"):

1

a.    On or about October 8, 2023, a proof of claim assigned claim no. 11 in the name of "Mike James NNN, Inc." as a general, unsecured claim for $115,000 which recites that it is on account of a "note" ("Claim No. 11");

b.    On or about October 8, 2023, a proof of claim assigned claim no. 12 in the name of "Mike James" as a general, unsecured claim for $50,308.64 which recites that it is for "salary "("Claim No. 12");

c.    On or about October 8, 2023, a proof of claim assigned claim no. 13 in the name of "James Capital Inc." as a general, unsecured claim for $1,875,000 which recites that it is on account of a "loan" ("Claim No. 13"); and

d.    On or about October 19, 2023, a proof of claim assigned claim no. 17 in the name of "James Capital Management, LLC." as a general, unsecured claim for $12,428.09 which recites that it is on account of "services performed" ("Claim No. 17").

James advises that earlier in 2025 he paid approximately $190,000 (the "SBA Payment") to pay off a loan by the Debtor in favor the Small Business Administration (the "SBA"). The SBA asserted a blanket lien against the Debtor's assets to secure that loan (the "SBA Lien"). The SBA has confirmed that the loan has been paid off and has withdrawn its proof of claim.

The Trustee has succeeded in negotiating a compromise of issues with James whereby the parties agree to a full walk-away settlement. The Trustee will not sue James to avoid the Subject Transfer, James will waive any subrogation rights he has on account of the SBA Payment, James will withdraw the James Proofs of Claims and waive any claims against the estate, and the parties will trade full, mutual releases.

The Trustee seeks approval of the Agreement by the Motion.

The Motion will be based on the Motion, the Memorandum of Points and Authorities, the Declaration of Carolyn A. Dye and the Request for Judicial Notice, all of which are attached to the Motion, the papers and pleadings in the Debtor's bankruptcy case, and such other evidence that may be presented at the hearing. For further information, see the Motion.

NOTICE IS HEREBY FURTHER GIVEN that, pursuant to Local Bankruptcy Rule 9013-1(f), any response to the Motion shall be in writing, filed with the Court and served upon counsel

2

1   for the Trustee named in the upper left-hand corner of this notice, and the United States Trustee,

2   915 Wilshire Blvd., Suite 1850, Los Angeles, California 90017, not later than 14 days before the

3   hearing.  Failure to do so may be deemed to be consent to the granting of the Motion.

4

5   DATED:  July 22, 2025                    LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                            L.L.P.

6

7                                           By:  _____/s/ Eric P. Israel_____
                                                 ERIC P. ISRAEL

8                                                Attorneys for Carolyn A. Dye, Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **TRUSTEE'S NOTICE OF MOTION AND MOTION TO APPROVE SETTLEMENT WITH MICHAEL JAMES; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF CAROLYN A. DYE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 22, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Eskandar Alex Beroukhim    alex.beroukhim@arnoldporter.com
- Brian K Condon    brian.condon@arnoldporter.com, edocketscalendaring@arnoldporter.com,ecf-10cc1820d4f0@ecf.pacerpro.com,maousbccourts@arnoldporter.com
- Carolyn A Dye (TR)    trustee@cadye.com, c197@ecfcbis.com;atty@cadye.com
- Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- Elan S Levey    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Kerri A Lyman    klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com;mhernandez@steptoe.com;aodonnell@steptoe.com
- Amy Lee Nashon    anashon@troygould.com
- Michael Abtin Shakouri    mshakouri@goodkinlaw.com, mcortez@goodkinlaw.com
- Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **July 22, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| James Capital Advisors, Inc.<br>1612 E Lancaster Blvd<br>Lancaster, CA 93535 | Civil Process Clerk<br>United States Attorney's Office<br>300 No. Los Angeles St.<br>Los Angeles, CA 90012 |
| U.S. Attorney General<br>Pamela Bondi<br>U.S. Department of Justice<br>950 Pennsylvania Ave., NW<br>Washington, D.C. 20530-0001 | U.S. Small Business Administration<br>Attn:  So Cal Legal Unit<br>330 No. Brand Blvd, Sutie 1200<br>Glendale, CA 91203-2304 |

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 22, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 22, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                   **F 9013-3.1.PROOF.SERVICE**